**Jack Walter CUVO, and Jennifer Cuvo, Plaintiffs**

v.

**Christopher DE BIAS, Officer, Individually and in his Official Capacity as a Member of the Palmer Township Police Department, Daniel Monek, Detective, Individually and in his Official Capacity as a Member of the Palmer Township Police Department, Bruce Fretz, Chief of Police, Individually and in his Official and Supervisory Capacity as Chief of the Palmer Township Police Department, and the Township of Palmer, Defendants**

No. Civ.A.03–CV–5799.

United States District Court, E.D. Pennsylvania.

Sept. 30, 2004.

John P. Karoly, Jr., Allentown, PA, for Plaintiffs.

James M. Flood, and Joseph F. McNulty, Jr., Allentown, PA, for Defendants.

## OPINION

GARDNER, District Judge.

This matter is before the court on Defendants' Motion to Dismiss Pursuant to F.R.Civ.P. 12(b)(6) filed January 26, 2004.[1] For the reasons expressed below, we grant defendants' motion to dismiss plaintiffs' Complaint.

Because we conclude that probable cause existed to arrest plaintiff Jack Walter Cuvo, we dismiss Counts I, II, III, V and VI for failure to state a claim upon which relief can be granted. Furthermore, we dismiss Counts I and II of plaintiff's Complaint, as those counts may be interpreted to aver that that defendants violated the substantive due process rights of plaintiff Jack Walter Cuvo when defen-

---

1. On February 16, 2004, Plaintiffs' Answer to Defendants' Motion to Dismiss Pursuant to F.R.Civ.P. 12(b)(6) was filed. On March 1, 2004, plaintiffs' brief in support of their answer was filed.

dants disseminated information concerning the seizure of Mr. Cuvo. In addition, we conclude that plaintiffs have failed to state a claim upon which relief can be granted in Counts IV and VII. Therefore, we dismiss Counts IV and VII in their entirety as well.

Moreover, we conclude that defendants in their individual capacities are entitled to qualified immunity in Counts I, II, III, V and VI. Accordingly, defendants De Bias, Monek and Fretz are each dismissed from those counts to the extent that those counts aver federal claims.

■ Finally, because we have dismissed all claims raising federal question jurisdiction, we decline to exercise our supplemental state jurisdiction. Therefore, we dismiss the pendent state law claims for lack of subject matter jurisdiction.[2]

## PROCEDURAL HISTORY

■ On October 20, 2003 plaintiff filed an eight-count Complaint in this matter.[3] In Count I, plaintiff Jack Walter Cuvo avers that all defendants violated his right to be free from illegal seizures pursuant to the Fourth Amendment of the United States Constitution and claims that his substantive due process rights were violated by certain publications made by defendants concerning the allegedly illegal seizure of Mr. Cuvo. 42 U.S.C. § 1983.[4]

In Count II Mr. Cuvo alleges that all defendants intentionally inflicted emotional distress upon him. In Count III Mr. Cuvo asserts assault and battery claims against all defendants. In Count IV he contends that all defendants negligently inflicted emotional distress upon him.

■ In Count V, plaintiff Jack Cuvo claims that all defendants falsely arrested him. In Count VI Mr. Cuvo asserts a claim of false imprisonment against all defendants. In Count VII he avers a claim of malicious prosecution against all defendants. In Count VIII, plaintiff Jennifer Cuvo alleges a loss-of-consortium claim against all defendants.[5]

---

2. Without deciding these issues, we note that State officials are granted official immunity under 42 Pa.C.S.A §§ 8501–8564. State law claims raised against public officials in their official capacities are necessarily barred by the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8545, because such an official necessarily acts within the scope of his office or duties, entitling him to official immunities. *Damron v. Smith*, 616 F.Supp. 424, 426 (E.D.Pa.1985). Moreover, under Pennsylvania law, officials in their individual capacities are subject to substantially the same (if not higher) level of protection under state law as they are under federal law. *See Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 568 A.2d 931 (1990).

3. On November 7, 2003, this action was reassigned to the undersigned from the calendar of former United States District Judge Franklin S. Van Antwerpen.

4. Plaintiffs also attempt to use 42 U.S.C. § 1983 as a vehicle for a claim under Section 8 of the Pennsylvania Constitution. Section 1983 does not authorize plaintiffs to assert state constitutional violations. Accordingly, we dismiss this inapposite claim.

We also note that plaintiffs attempt to sue named governmental officials in their official capacity, and the governmental entity itself. However, "a suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent'", *McMillian v. Monroe County*, 520 U.S. 781, 785 n. 2, 117 S.Ct. 1734, 1737, 138 L.Ed.2d 1, 7 (1997) (internal citations omitted); *see* 42 Pa.C.S.A. § 8545; *Damron v. Smith*, 616 F.Supp. 424, 426 (E.D.Pa.1985). Accordingly, because we conclude that it is unnecessarily redundant to retain the governmental officials in their official capacity, we dismiss from this action all governmental officials in their official capacity.

5. Counts II, III, V, VI and VIII claim state tort law causes of action against The Township of Palmer and the individual defendants. Each count avers an intentional tort. Without deciding the issue, we note that none of

The action is before the court on federal question jurisdiction. *See* 28 U.S.C. §§ 1331, 1343. We may exercise supplemental jurisdiction over plaintiffs' pendant state law claims if federal question jurisdiction exists. *See* 28 U.S.C. § 1367. Venue is appropriate because plaintiffs allege that the facts and circumstances giving rise to their causes of action occurred in Northampton County, a county within the geographical boundaries of the United States District Court for the Eastern District of Pennsylvania. *See* 28 U.S.C. §§ 118, 1391. Plaintiffs demand a trial by jury.

## FACTS

Based upon the allegations in plaintiffs' Complaint, which we must accept as true

for the purposes of this motion, the pertinent facts are as follows. On or about October 9, 2001, plaintiff Jack Walter Cuvo was beaten by members of the City of Easton Police Department.[6] Mr. Cuvo suffered serious injuries including head trauma. Because Mr. Cuvo is a well-known athlete and businessman in the Easton, Pennsylvania, area, the beating was generally known there.[7]

Defendant Daniel Monek is a Detective on the police department of defendant The Township of Palmer. Palmer Township is immediately adjacent to the City of Easton.[8] In addition to the generally known information regarding the beating, Defendant Monek was also aware of an ongoing situation between Mr. Cuvo and the City of Easton Police Department that predat-

the causes of action appear to fall within the narrow range of issues concerning which the Commonwealth of Pennsylvania has abrogated its sovereign immunity. *See* 42 Pa. C.S.A. §§ 8541–8564.

In their brief, plaintiffs aver that Counts II, III, V, VI and VIII should be construed as causes of action brought pursuant to 42 U.S.C. § 1983. We find no support for plaintiffs' contention. In order to state a claim under 42 U.S.C. § 1983, plaintiffs must not only present facts that establish a Constitutional violation, but also must indicate which Constitutional right possessed by plaintiff was violated. *See Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443, 454 (1989). Plaintiffs have failed to allege any Constitutional right defendants may have violated in these claims.

Plaintiffs argue that because "the Rules do not mandate either counts or labels, headings, or titles, but rely simply on notice pleading, the Plaintiff in this cause of action should not be penalized for the manner and format of the pleadings." Initially, we note that plaintiffs are incorrect. Rule 10 of the Federal Rules of Civil Procedure does mandate that pleadings be organized with counts and titles. But even if it did not, we note that neither the Federal Rules of Civil Procedure nor the Rules of Civil Procedure for the United States District Court for the Eastern District of Pennsylvania require pleadings to conform to the rules of

grammar nor mandate in which language pleadings must be filed. Nevertheless, plaintiffs are required to articulate cognizable cause of action.

In requiring plaintiffs to aver the legal basis for their claims, we are not imposing a heightened. pleading standard or requiring fact pleading. Rather we are merely requiring plaintiffs to state the claims upon which they are seeking relief. By merely alleging that defendants committed an "intentional tort" upon husband plaintiff, rather than specifying that the type of intentional tort committed was an "assault", plaintiffs have not given defendants sufficient notice of the type of claim concerning which defendants must conduct discovery in order to defend against the claim. The absence of such notice is tantamount to a violation of defendants' due process rights to fair notice of the legal claims asserted against them.

However, as we discuss below, plaintiffs fail to state a federal claim upon which relief may be granted regardless of how this action was pled.

6. Complaint, paragraphs 10, 11.

7. Complaint, paragraph 12.

8. Complaint, paragraph 10.

ed the October 9, 2001 beating.[9]

On or about October 19, 2001, Mr. Cuvo was driving his automobile when he experienced a momentary loss of consciousness.[10] While Mr. Cuvo was unconscious his vehicle left the road and struck a posted sign and a fire hydrant, before coming to rest on a curb or sidewalk.[11] At that time, it appeared that Mr. Cuvo required medical treatment.[12]

Defendant Christopher De Bias, a member of the Palmer Township Police Department arrived at the scene.[13] Thereafter, Officer De Bias took Mr. Cuvo into custody.[14] Officer De Bias then transported Mr. Cuvo to Easton Hospital.[15] At Easton Hospital, Officer De Bias and Mr. Cuvo were joined by Detective Monek.[16]

While at the hospital, representatives of plaintiff's counsel met with defendants De Bias and Monek.[17] Representatives of plaintiff's counsel asserted that the cause of Mr. Cuvo's accident was a loss of consciousness resulting from the October 9, 2001 beating.[18] In response, defendants De Bias and Monek replied that Mr. Cuvo was under arrest for Driving under the influence of alcohol or controlled substance in violation of 75 Pa.C.S.A. § 3731.[19]

Defendants De Bias and Monek published information consistent with their assertion that Mr. Cuvo was arrested for driving under the influence of a controlled substance.[20] Defendants De Bias and Monek knew that Mr. Cuvo was not under the influence of a controlled substance when they took him into custody and committed these acts to curry favor with the Easton Police Department.[21] Defendant Bruce Fretz, the Palmer Township Chief of Police, did not stop defendants De Bias or Monek from making these statements and, in fact, tacitly approved of the statements.[22]

No criminal or traffic offense charges were brought against Mr. Cuvo as a result of these incidents.[23]

## STANDARD FOR MOTION TO DISMISS

When considering a motion to dismiss, the court must accept as true all factual allegations in the complaint and construe all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. *Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 65 Fed.Appx. 803, 805, 2003 WL 1919361 (3d Cir.2003) (*quoting Lorenz v. CSX Corp.*, 1 F.3d 1406, 1411 (3d Cir.1993)). A Rule 12(b)(6) motion should be granted "if it appears to a certainty that no relief could be granted under any set of facts which could be

---

**9.** Complaint, paragraph 13. A description of the situation between plaintiff Cuvo and the Easton police was not provided in the Complaint.

**10.** Complaint, paragraph 14.

**11.** Complaint, paragraph 15.

**12.** Complaint, paragraph 16.

**13.** Complaint, paragraph 17.

**14.** Complaint, paragraphs 17, 18.

**15.** Complaint, paragraph 18.

**16.** Complaint, paragraph 18.

**17.** Complaint, paragraph 19.

**18.** Complaint, paragraph 19.

**19.** Complaint, paragraph 20. Section 3731 was repealed and reenacted as 75 Pa.C.S.A. § 3802, effective February 1, 2004.

**20.** Complaint, paragraphs 20, 21, 22.

**21.** Complaint, paragraphs 21, 23.

**22.** Complaint, paragraph 27.

**23.** Complaint, paragraphs 24, 25.

proved." *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir.1997) (*citing D.P. Enter. Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984)). But a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse*, 132 F.3d at 906. (Citations omitted.)

## DISCUSSION

### Arrest of Plaintiff

In their Complaint, plaintiffs aver that defendants violated Mr. Cuvo's rights by illegally seizing him at the accident scene and for continuing to keep him in custody while Mr. Cuvo was at the hospital. Plaintiffs contend that Palmer Township is also liable for the allegedly unlawful seizure because the Township developed and implemented a policy, practice or procedure which permitted the unlawful seizure. Plaintiffs also aver that the allegedly illegal seizure gives rise to Pennsylvania state causes of action for intentional infliction of emotional distress, assault and battery, false arrest, and false imprisonment averred in Counts II, III, V and VI, respectively.

Defendants counter that the seizure of Mr. Cuvo was conducted pursuant to a lawful statutory regime and supported by probable cause. Defendants contend that, under Pennsylvania law, any person who operates a vehicle has given implied consent for the police to examine the driver's blood alcohol content under certain circumstances. Defendants contend that when Officer De Bias found Mr. Cuvo in the driver's seat of his automobile, crashed on the side of the road after having struck a traffic sign and fire hydrant, seemingly requiring medical attention, reasonable grounds existed to take Mr. Cuvo into custody.

 For the reasons expressed below, we conclude that probable cause existed to detain and arrest plaintiff Jack Walter Cuvo pursuant to the Fourth Amendment of the United States Constitution [24] and the statutory regime created by the implied consent law of Pennsylvania.

 A police officer may effectuate an arrest for a misdemeanor charge if there is reasonable cause to suspect that the detained person committed the offense and the officer believes that the suspect presents a danger of harm to himself or others. *See* U.S. CONST. amend. IV; American Law Institute, *Model Code of Pre–Arraignment Procedure* § 120.1(1)(b)(ii)(1975); *Cf.* 18 Pa.C.S.A. § 2711; 75 Pa.C.S.A. § 1547(a); *Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). In order for reasonable cause to exist for an arrest, the arrest must be based upon probable cause.[25] *Ker v. California*, 374

---

**24.** For purposes of applying the Fourth Amendment to the states, the protections of the Fourth Amendment are incorporated into the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Hence, although this action must be brought under the Fourteenth Amendment, we analyze plaintiffs averments concerning the seizure of Mr. Cuvo under the Fourth Amendment.

**25.** An officer's subjective intent is irrelevant to a determination of probable cause or a Section 1983 claim. If probable cause exists to justify Mr. Cuvo's arrest, then defendants' "good faith is irrelevant and any bad faith motivation on [their] part is immaterial." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). Accordingly, if defendants' conduct was within the bounds of the Fourth Amendment, then plaintiffs' averments concerning defendants' vile state of mind is of no consequence.

U.S. 23, 34–35, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726, 739 (1963).

■■■■■■ "[T]he standard of probable cause 'applies to all arrests. . . .' If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 1557, 149 L.Ed.2d 549, 577 (2001). Whether probable cause exists is to be determined by examining the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

■■■■ "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—. . . [these] are the factual and practical considerations of everyday life of which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 231–232, 103 S.Ct. at 2329, 76 L.Ed.2d at 544 (1983). Accordingly, we must "determine whether the facts available to the officers at the moment of the arrest 'warrant a man of reasonable caution in the belief' that an offense has been committed." *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142, 148 (1964) (*quoting Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555 (1925)).

■■■■ Thus, in analyzing whether Officer De Bias had probable cause to arrest Mr. Cuvo, we examine the objective factors apparent to Officer De Bias at the time he encountered Mr. Cuvo and reject the use of hindsight. *Hill v. California*, 401 U.S. 797, 804, 91 S.Ct. 1106, 1111, 28 L.Ed.2d 484, 490 (1971); *see Commonwealth v. Rodriguez*, 526 Pa. 268, 273, 585 A.2d 988, 990 (1991).

When Officer De Bias chanced upon Mr. Cuvo's accident scene, he discovered Mr. Cuvo crashed on the side of the road after having crashed through a traffic sign and a fire hydrant.[26] The automobile that Mr. Cuvo was driving had coming to rest on a curb or sidewalk. At that time, it appeared that Mr. Cuvo required medical treatment.

From the circumstances, it is clear that Mr. Cuvo had been involved in some traffic incident. Moreover, the circumstances were of a sort that did not occur absence some misconduct. In fact, although plaintiffs contends that the accident occurred because of injuries allegedly inflicted by the Easton police, plaintiffs concede in the Complaint that Mr. Cuvo was driving the automobile when it crashed through the posted sign, through the fire hydrant and onto the curb.

More important than plaintiffs' concession, however, is the fact that the conclusion that Mr. Cuvo was driving the automobile when it crashed through the posted sign, through the fire hydrant and onto the curb is objectively reasonable. Moreover, while it is reasonable to conclude that the accident occurred because of some medical malady afflicting Mr. Cuvo, it is equally reasonable to conclude that the accident occurred because Mr. Cuvo was under the influence of alcohol or a controlled substance.

■■■■ In evaluating whether probable cause existed we need go no further than to ask if this conclusion would warrant a reasonable person to believe that an offense has been committed. *Beck*, 379 U.S. at 96, 85 S.Ct. at 228, 13 L.Ed.2d at 148 (1964). Hence, because a reasonable person would find the arrest of Mr. Cuvo was

---

**26.** There is no allegation in the Complaint that Officer De Bias was aware of Mr. Cuvo's pre-October 9, 2001 troubles with the Easton Police when he took Mr. Cuvo into custody.

supported by objective, probable cause, his imprisonment from the time of the initial encounter at the scene to the final encounter at the hospital was justified. Moreover, the finding of probable cause to arrest authorizes the police to engage in the verbal and physical contact alleged to have occurred between the police and Mr. Cuvo. *See Renk v. City of Pittsburgh,* 537 Pa. 68, 641 A.2d 289 (1994). Accordingly, such contact did not constitute a Constitutional violation.

■ Furthermore, because we find no Constitutional violation arising from Officer De Bias' arrest and detainment of Mr. Cuvo, we are precluded from finding that any other officer or the Township violated Mr. Cuvo's rights by not preventing the arrest and subsequent imprisonment. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Because Mr. Cuvo suffered no Constitutional harm, there can be no Constitutional violation.

■ Moreover, Pennsylvania law limits an officer's discretion when presented with facts similar to those presented here. When police encounter an automobile accident scene in which any person involved in the accident appears to require medical attention, an officer may, upon probable cause, take an automobile operator into custody for the purpose of conducting a blood alcohol test. 75 Pa.C.S.A. § 1547(a). Section 1547(a) provides:

> (a) **General Rule.**—Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:
>
> (1) in violation of section … 3802 relating to driving under influence of alcohol or controlled substance …; or
>
> (2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.[27]

For purposes of this statute, "reasonable grounds" have been interpreted to require probable cause. *Commonwealth v. Riedel,* 539 Pa. 172, 180, 651 A.2d 135, 140 (1994).

As discussed above, not only does plaintiff concede, but there was evidence at the scene to support, the objective conclusion that Mr. Cuvo was driving the automobile and that he required medical attention as a result of the accident. This alone is sufficient to authorize Officer De Bias' actions at the scene. However, Officer De Bias' actions are also supported by our conclusion that the Officer had probable cause to determine that the accident occurred because Mr. Cuvo was under the influence of alcoholic beverages or a controlled substance. Accordingly, we conclude that Officer De Bias' action were authorized by 75 Pa.C.S.A. § 1547(a).[28]

---

**27.** Plaintiff does not aver that the Pennsylvania implied consent law is unconstitutional. Thus, we have no occasion to review that law here. However, we note that even in the unlikely event that the law were to be unconstitutional, the law has been repeatedly upheld by the appellate courts of Pennsylvania. *See e.g. Commonwealth v. Riedel,* 539 Pa. 172,

180, 651 A.2d 135, 140 (1994); *Commonwealth v. Leib,* 403 Pa.Super. 223, 588 A.2d 922 (1991). Accordingly, we conclude that no reasonable officer would suspect the law to be unconstitutional.

**28.** We further note that, as a matter of policy, we want our peace officers to ensure that people who are injured in automobile acci-

■ Accordingly, because the arrest and subsequent imprisonment of Mr. Cuvo was supported by both probable cause and the Pennsylvania implied consent law, we grant defendants' motion to dismiss plaintiffs' Section 1983 claims as to all defendants in Count I and in any other count arising from the arrest and subsequent imprisonment of Mr. Cuvo.[29] Moreover, we dismiss plaintiff Jennifer Cuvo's claims not only because a loss of consortium claim cannot be sustained in the absence of defendants' liability to the other spouse, *Murray v. Commercial Union Insurance Company*, 782 F.2d 432, 438 (1986), but also because Section 1983 does not permit loss of consortium claims, *Hogan v. City of Easton*, Civ. No. 04–759, 2004 WL 1836992 *6, 2004 U.S. Dist. LEXIS 16189 *16–17, (E.D.Pa. Aug. 15, 2004).

### *Defamation*

■ In the remainder of Counts I and II, plaintiffs aver that defendants violated Mr. Cuvo's substantive due process rights when they disseminated information concerning his arrest. These claims fail because defamatory acts are not Constitutional violations.[30] *Boyanowski*, 215 F.3d 396, 401 (3d Cir.2000). Hence we dismiss Counts I and II as they pertain to the statements made by defendants concerning the seizure of Mr. Cuvo.

■ However, even if plaintiffs could claim a substantive due process violation, plaintiffs must plead governmental actions that "shock the conscience", *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), and interfere with rights "implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697, 708 (1987) (*quoting Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288, 292 (1937)).

In the Complaint, plaintiffs aver that defendants publicly commented on Mr. Cuvo's arrest and stated that Mr. Cuvo was under the influence of a controlled substance while driving. But the Complaint concedes that Officer De Bias found Mr. Cuvo at the wheel of his automobile after an apparent accident in which Mr. Cuvo had left the road and hit both a traffic sign and a fire hydrant. Moreover, the Complaint concedes that Mr. Cuvo required medical attention. While these factors may not arise to probable cause for an arrest under Pennsylvania's driving under

---

dents receive proper medical care. Indeed, if Officer De Bias were to have arrived at the scene, found Mr. Cuvo in need of dire medical attention and failed to render aid, then there might be a basis for a cause of action.

29. We dismiss any Section 1983 claim of negligence from plaintiffs' Complaint because the United States Constitution is not a "font of tort law", *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 1717, 140 L.Ed.2d 1043, 1058 (1998), and there is no liability for conduct which plaintiff asserts was the result of mere negligence, including negligent infliction of emotional distress. *Cf. Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). Moreover, we conclude that because defendants were privileged to arrest and imprison Mr.

Cuvo and therefore are not liable for the arrest and imprisonment of Mr. Cuvo, defendants cannot be liable for any emotional distress, intentionally or negligently inflicted upon Mr. Cuvo as a result of the arrest or imprisonment. *See Dintino v. Echols*, 243 F.Supp.2d 255, 267–268 (E.D.Pa.2003).

30. We note without deciding that if this were a state law claim, then the claim would fail because "an employee who commits a defamatory act is still entitled to sovereign immunity." *Altieri v. Pennsylvania State Police*, Civ. No. 98–5495, 2000 WL 427272, *19, 2000 U.S. Dist. LEXIS 5041, *55 (E.D.Pa.2000) (*citing Yakowicz v. McDermott*, 120 Pa. Cmwlth. 479, 488 n. 5, 548 A.2d 1330, 1334 (1988)).

the influence statute, it is certainly reasonable under the circumstances to believe that Mr. Cuvo was under the influence of an intoxicant at the time of the accident.

Accordingly, we conclude that defendants' statements fail to shock the conscience. *Cf. Boyanowski,* 215 F.3d 396; *Mertik v. Blalock,* 983 F.2d 1353, 1367–1368 (6th Cir.1993) (affirming district court conclusion that official's publication of false accusations of sexual abuse to a minor did not rise to the level of shocking the conscience). Hence, we conclude that, even if plaintiff were to create a new Constitutional right against defamatory statements, Count I and II, as they pertain to the statements made by defendants concerning the seizure of Mr. Cuvo, fail to state a claim upon which relief may be granted.

### Qualified Immunity

■ The standard for qualified immunity is uniform regardless of "the precise nature of various officials' duties or the precise character of the particular rights alleged to have been violated." *Anderson v. Creighton,* 483 U.S. 635, 643, 107 S.Ct. 3034, 3040–3041, 97 L.Ed.2d 523, 533–534 (1987).

■ Qualified immunity is an affirmative defense that must be pled by a defendant who is a government official. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). While qualified immunity is an affirmative defense, it does not simply protect a defendant official from liability, but rather from having to defend suit. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Put another way, qualified immunity is "an entitlement [for government officials] not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411, 425 (1985).

The doctrine was established because the court found the tribulations of litigation an unreasonable burden on officials exercising subjective good faith in their discretionary duties. The United States Supreme Court determined that any potential good that could come of suits against government officials for discretionary acts was outweighed by the chilling effect that such litigation would have on legitimate governmental activities. *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

■ If qualified immunity is to be defeated, a plaintiff must satisfy a two-prong test. First, he must establish that the government official violated a "basic, unquestioned constitutional right" belonging to plaintiff. *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736–2737, 73 L.Ed.2d at 408 (*citing Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214, 225 (1975)).

Next, a plaintiff must establish that the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2737, 73 L.Ed.2d at 409 (*citing Wood,* 420 U.S. at 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214, 225).

■ To satisfy the first prong of the test, it is not enough to point to a provision of a Constitutional amendment such as the due process clause. Analysis at this level of generality eviscerates the protection that the doctrine is meant to provide. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–3039, 97 L.Ed.2d 523, 530–531 (1987). Rather, plaintiff must establish that "in the light of pre-existing law the unlawfulness [of the

official action was] apparent." *Id.*, 483 U.S. at 640, 107 S.Ct. at 3039, 97 L.Ed.2d at 531. Thus, plaintiff must show how the limits of a Constitutional protection have been so clearly defined as to preclude the official's act from being questionably Constitutional.

■ To satisfy the second prong, plaintiff must show that the defendant official had notice that his alleged conduct was outside established Constitutional barriers. Plaintiff may establish this prong by showing that the state of the law is so clear that any reasonable official knew, or should have known, that his conduct would be illegal.

■ In so doing, however, the qualified "immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police action." *Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272, 284 (2001); *see Anderson*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523. Thus, merely establishing a Constitutional violation will not defeat immunity. This standard is meant to protect all but the most egregious of offenses or the most incompetent of officials.

■ When considering a qualified immunity defense, we must determine the validity of the defense as a matter of law. It is improper to allow a jury to consider such a defense. *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). However, we are required to take the facts in the light most favorable to the plaintiff. *Saucier v. Katz*, 533 U.S. at 201, 121 S.Ct. at 2156, 150 L.Ed.2d at 281. If the facts viewed in this light do not overcome either prong of the qualified immuni-

ty defense, then judgment must be granted for defendant.

In our foregoing analysis, we concluded that plaintiffs have failed to adequately plead a violation of the Fourth Amendment as that amendment has been incorporated into the Due Process Clause of the Fourteenth Amendment. Accordingly, we conclude that defendants are entitled to qualified immunity on the first level of a qualified immunity analysis.

■ Nevertheless, we shall briefly discuss the question of whether defendants were on notice that their conduct was extra-Constitutional. In conducting this analysis we are mindful that officers are entitled to make reasonable mistakes in the course of their duties and still fall within the protection of qualified immunity.

Even if the circumstances which Officer De Bias encountered at Mr. Cuvo's accident scene do not constitute probable cause of driving under the influence of an intoxicant, it was objectively reasonable for Officer De Bias to suspect that Mr. Cuvo was intoxicated. Mr. Cuvo was involved in a single car accident. He had crashed through a traffic sign and a fire hydrant before coming to rest on the curb or roadside. When Officer De Bias discovered Mr. Cuvo, Mr. Cuvo was in need of medical attention. The totality of these circumstances constitutes reasonable suspicion if not probable cause.

In addition to these factors, 75 Pa.C.S.A. § 1547(a) seemingly permits an officer to take an operator of an automobile into custody when a vehicle is "involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed." 75 Pa.C.S.A. § 1547(a).[31]

---

**31.** The statute provides that the driver of any vehicle involved in an accident in which the

operator required treatment at a medical facility shall be deemed to have given consent

While an officer must have probable cause to believe that the driver was intoxicated, Officer De Bias actions are consistent with a good faith attempt to perform his discretionary duties.

While not necessary to our decision, we further note that the level of intrusion supports the grant of qualified immunity. When Officer De Bias arrived at the scene, Mr. Cuvo required medical attention. Officer De Bias took Mr. Cuvo into custody and transported him to a medical facility. There is no allegation in the Complaint that the intrusion extended beyond that point. Indeed, the Complaint avers that no criminal charges were filed against Mr. Cuvo and that the police did not even issue Mr. Cuvo a traffic ticket.

Accordingly, we conclude Officer De Bias actions were objectively reasonable under the circumstances and not so plainly extra-constitutional so as to preclude him from a grant of qualified immunity.

■ Because plaintiffs' claims for false arrest, assault, and battery merely restate plaintiffs' Fourth Amendment claim, Officer De Bias is also entitled to qualified immunity for those counts. Moreover, as we have discussed above, the "imprisonment" which followed the initial arrest was narrowly tailored to the circumstances. The period of custody was reasonable and ceased while Mr. Cuvo was at the hospital. Finally, because Officer De Bias is entitled to qualified immunity for the actions that underlie Count II, he is entitled to qualified immunity on plaintiffs' intentional infliction of emotional distress claim.

■ Because plaintiffs do not aver that the conduct of Detective Monek and Chief Fretz exceeded that of Officer De Bias, these defendants are also entitled to quali-

fied immunity for those counts. Accordingly, because we conclude that defendants De Bias, Monek, and Fretz are entitled to qualified immunity for the averments in Count I and the remaining counts to the extent that those causes may be construed as federal causes of action, we grant defendants' motion to dismiss all federal claims against the individual defendants.

### State Law Claims

Because we dismiss all plaintiffs' claims which conferred federal question jurisdiction upon this court, we decline to exercise supplemental jurisdiction over plaintiffs' state law claims. See Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 295 (3d Cir.2003). Accordingly, we dismiss plaintiffs' state law claims for lack of subject matter jurisdiction.

### CONCLUSION

For the foregoing reasons, we grant defendants' motion to dismiss and dismiss plaintiffs' Complaint. Specifically, we grant defendants' motion to dismiss all claims in Count I and the remaining counts to the extent that those counts may be interpreted as federal causes of action under Section 1983. Because we dismiss all claims conferring federal question jurisdiction upon the court, we decline to exercise supplemental jurisdiction over plaintiffs' state law claims. Hence, we grant defendants' motion to dismiss plaintiffs' state claims for lack of subject matter jurisdiction.

---

to one or more chemical tests of breath, blood or urine. This would seem to permit, if not require, the officer to take such an operator

into custody for the purpose of administering those tests.