

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-23-2003

# Jurimex Kommerz v. Case Corp

Precedential or Non-Precedential: Non-Precedential

Docket 02-1916

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Jurimex Kommerz v. Case Corp" (2003). *2003 Decisions.* Paper 632.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/632

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-1916

_____


JURIMEX KOMMERZ TRANSIT G.M.B.H.; JURIMEX KOMMERZ
TRANSIT AGRAR CONSULTING PROJEKT KAS G.M.B.H.;
ARGE IPC-JURIMEX

Appellants

v.

CASE CORPORATION

_____


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

(D.C. Civil No. 00-cv-00083)
District Judge:  The Honorable Joseph J. Farnan, Jr.

_____


ARGUED MARCH 12, 2003

BEFORE: SLOVITER, NYGAARD, and ALARCON,* Circuit Judges.


(Filed: April 23, 2003)

_____

*Honorable Arthur L. Alarcon, Senior Circuit Judge for the United States Court of Appeals
for the Ninth Circuit, sitting by designation.

Daniel J. Kornstein, Esq. (Argued)
Kornstein Veisz Wexler & Pollard
757 Third Avenue
New York, NY 10017
                Counsel for Appellants

David C. McBride, Esq.
John W. Shaw, Esq.
Young Conaway Stargatt & Taylor
P. O. Box 391, 1000 West Street
Brandywine Building, 17th Floor
Wilmington, DE 19899

William E. Deitrick, Esq.
William B. Berndt, Esq.
James C. Schroeder, Esq. (Argued)
Mayer Brown Rowe & Maw
190 South LaSalle Street
Chicago, IL 60603
                Counsel for Appellee

_____

OPINION OF THE COURT

_____

NYGAARD, Circuit Judge.

This appeal involves a series of transactions arranging for the sale of agricultural equipment in Kazakhstan. Jurimex, a foreign plaintiff, filed suit in the District Court against Case Corporation—the parent company to Case France, Case Europe, and Case Neustadt—alleging that Case breached an oral contract providing a commission to Jurimex for acting as the local liaison between Case, potential financiers, and Golden Grain, a Kazakh buyer. Case filed a motion to dismiss pursuant to 12(b)(1) and 12(b)(7), arguing that its foreign subsidiaries were necessary and indispensable parties under Rule 19

2

and addition of these parties would destroy diversity jurisdiction. The District Court agreed and granted the motion. Jurimex argued that it was trying to hold Case liable, not as merely the parent of the subsidiaries, but rather because the subsidiaries were acting as agents of Case. However, this theory could not be found anywhere in the original complaint (indeed, there was no mention of a subsidiary). The District Court properly applied a Rule 19 analysis and dismissed the complaint. The District Court also properly denied discovery on the agency theory at that time because there was nothing in the complaint to which the theory could relate. Faced with the dismissal, Jurimex moved to amend their complaint to more specifically plead an agency relationship between Case and its European subsidiaries. The District Court denied this motion, finding that the amendment would be futile.

We will affirm the decision of the District Court to dismiss the original complaint because agency was never pleaded. However, we will reverse the decision to deny the amended complaint because in it Jurimex has sufficiently pleaded agency.

I. Jurisdiction and Standard of Review

The District Court had subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds $75,000 and the parties to the dispute are a citizen of a State and citizens of a foreign state. We have jurisdiction over a final order of the District Court pursuant to 28 U.S.C. §1291.

There are two decisions on appeal and each has its own standard of review. As to the decision to dismiss the complaint for failure to join an indispensable party, we

3

have a bifurcated process of review. "To the extent that a district court's Rule 19(a) determination is premised on a conclusion of law, ...our scope of review is plenary. We, however, review any subsidiary findings of fact only for clear error." *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993). Under Rule 19(b), we review the district court's determination that the Case subsidiaries were indispensable and the resulting dismissal of the complaint for abuse of discretion. *Id*. at 403. The decision to deny discovery is also reviewed under an abuse of discretion standard. *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000).

The District Court's second order denied Jurimex's motion for leave to amend its complaint as futile. We review such decisions for abuse of discretion. *Krantz v. Prudential Investments Fund Management*, 305 F.3d 140, 144 (3d Cir. 2002). "A district court abuses its discretion when its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Hofkin v. Provident Life & Acc. Ins. Co.*, 81 F.3d 365, 369 (3rd Cir. 1996) (quoting *International Union, United Auto., Aerospace and Agric. and Implement Workers of Am., UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (1987) appeal on remand, 917 F.2d 107 (3rd Cir. 1990)).

## II. Background

As this appeal comes on a motion to dismiss, "we accept all factual allegations in the complaints and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiffs." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1411 (3d

4

Cir.1993). According to the amended complaint,[1] in April 1999, Case Neustadt, on behalf of Case, sought to obtain Jurimex's assistance in brokering a sale between Case and Agro Industrial Corporation Golden Grain (Golden Grain), a corporation in Kazakhstan. Although another company, I.P. Consult (IPC), was acting as Case's representative in Kazakhstan, it had no experience in the grain trade or with such large transactions. In May 1999, representatives of Case, Jurimex, and IPC met in Vienna, Austria, and reached a business agreement. This agreement divided the work required to effectuate the transaction in Kazakhstan. IPC would handle the 'technical' aspects of the transaction relating to the equipment and Jurimex agreed to handle the 'agricultural' aspect. Jurimex would be responsible for lining up "offtakers," which are companies that agree to purchase the wheat produced by Golden Grain once they are using the new Case equipment. These guarantees by the offtakers are essential for securing credit from a bank for the purchase of the Case equipment, as they evince future income and assuage the bank that the money lent to Golden Grain will be repaid.

After the meeting, Patrice Loiseleur, Business Manager of International Sales at Case France, on behalf of Case, requested that Jurimex conduct a project study for the machinery and a feasibility study on the exportation of Golden Grain's wheat in Kazakhstan. Loiseleur also promised Jurimex that it would act as Case's future

1. We draw the factual scenario alleged by Jurimex from the amended complaint where Jurimex identified the specific subsidiaries involved in the meeting, transactions, etc. The original complaint was identical in factual nature but referred to "Case" generically, rather than acknowledging the subsidiaries, and failed to allege agency.

5

representative in Kazakhstan and would be responsible for financing the transaction. To accommodate this request, Jurimex formed Jurimex Kommerz Transit Agrar Consulting Projekt KAS (Jurimex Projekt) and created an Austrian partnership with IPC, called Arge IPC-Jurimex (IPC-Jurimex) to negotiate with Golden Grain.

The parties met again at the end of May 1999 in Paris and agreed to the financial aspects of the transaction. Specifically, of the estimated $40 million in revenues, $23.2 million would go to Case and the remaining $16.8 million would be used for freight costs and compensation to IPC-Jurimex. During the meeting, Girard Chiffert, an executive of Case Europe, confirmed to Jurimex that the financing guidelines were dictated by Case and that any changes would have to go through Case. Jurimex was also instructed by Loiseleur to continue negotiating with Golden Grain and Golden Grain's bank and continue to seek more offtakers.

Several exchanges occurred in June of 1999, where top management of Case, Case Europe, Case France and IPC-Jurimex reached an understanding of the financial structure and decided to affirmatively proceed with the transaction. However, Case and IPC held a secret meeting with a different bank that had expressed interest in financing the transaction and Glencore Grain, an offtaker already obtained by Jurimex, at which time the parties agreed to proceed with Case directly and cut Jurimex out of the deal with respect to both the bank's financing and the future sale of Golden Grain's wheat to Glencore. Ultimately, the transaction was completed without Jurimex's involvement. Jurimex claims that Case's unlawful exclusion of Jurimex from the transaction deprived them of $7.5

6

million in proceeds from the direct transaction, as well as an additional $28 million from the fees associated with the wheat sales previously arranged and finalized by Jurimex. Case also reneged on its promise to make Jurimex its representative in Kazakhstan, depriving Jurimex of substantial future business.

The amended complaint asserts claims against Case, as joint tortfeasor by virtue of its agency relationship with its subsidiaries, Case France, Case Europe, Case Neustadt, for (1) breach of contract and implied covenant of good faith and fair dealing, (2) breach of implied contract, (3) promissory estoppel, (4) quasi-contract/unjust enrichment/restitution, (5) tortious interference, (6) unfair competition and misappropriation, and (7) prima facie tort.

In response to Jurimex's original complaint, Case filed a motion to dismiss under Rule 12 (b)(1), 12 (b)(7), 19, and the doctrine of forum non conveniens. The heart of Case's argument was that the allegedly improper conduct took place entirely in Europe and through the sole initiative of Case's subsidiaries. As the subsidiaries are separate corporate entities, to hold the parent corporation liable for their actions, they must be joined to the lawsuit as necessary parties. The District Court agreed and engaged in Rule 19 analysis of whether the subsidiaries were necessary and indispensable parties. Because the conduct took place through the subsidiaries and joinder would destroy diversity, the District Court found 19(a) satisfied. Turning to 19(b), the District Court explained its concern for prejudice to the unjoined subsidiaries if a judgment was entered against the parent corporation and the likelihood that there was a better forum in Europe. The District

7

Court specifically excluded consideration of the principal-agency theory put forth by Jurimex because it was not alleged in the complaint and denied discovery as to the theory for the same reason.

In light of the adverse decision, Jurimex moved to amend its complaint to include specific language alleging the principal-agency theory, as well as a joint tortfeasor theory. The District Court denied this motion as futile in its March 27, 2002 opinion. The District Court held that Jurimex had not alleged a factual predicate for agency because it did not point to consent by the subsidiaries to act as Case's agent, nor Case's request that the subsidiaries so act. The District Court also found the allegations of Case's control to be too conclusory. The joint tortfeasor theory was also denied, on the grounds that Jurimex had not alleged any tortious conduct by Case, but rather by its subsidiaries. Ultimately, the District Court denied the motion to amend for failure to state a claim.

### III. Discussion

After the initial complaint was dismissed, Jurimex moved to amend its complaint to include specific language detailing the agency relationship.[2] The District Court denied the motion after finding that the facts alleged were not sufficient to state a claim. The District Court committed legal error by failing to consider the effects of certain factual pleadings, and applied an incorrect pleading standard for agency in the

---

2.    We will center our discussion on the District Court's decision to deny the amended complaint and affirm the decision to dismiss the original complaint without comment.

8

context of a Rule 12(b)(6) motion. The decision reached by the District Court demonstrates that it was not satisfied with the evidence of agency. However, if a complaint is properly pleaded, the concern for lack of evidence is only germane after an opportunity for discovery.

In *Shane v. Fauver*, we discussed the appropriate standard for a District Court to evaluate a motion to amend in light of its potential futility. 213 F.3d 113 (3d Cir. 2000). We explained that:

> Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility. "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In assessing "futility," the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency.

*Id*. at 115 (citations omitted). During its analysis of the original complaint, the District Court found that the failure to allege agency was fatal to Jurimex's argument that subsidiaries do not have to be joined. Specifically, the District Court noted that the deficiency in the complaint was the reason the jurisdictional analysis was facial rather than factual. *See* Mem. Op. at J.A. 11 (citing *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000)). Thus, the District Court regarded the complaint as having failed to state a claim under the agency theory and review of Jurimex's amended complaint should fall under the procedural protections of Rule 12 (b)(6).

9

Under Delaware law,[3] proof of agency within the context of a parent-subsidiary relationship requires that the plaintiff "demonstrate that the agent was acting on behalf of the principal and that the cause of action arises out of that relationship." *E.I. DuPont De Nemours and Co. v. Rhone Roulenc Fiber and Resin Intermediates*, 269 F.3d 187, 198 (3d Cir. 2001). We have said that "[o]ne corporation whose shares are owned by a second corporation does not, by that fact alone, become the agent of the second company." *Id.* (quoting *Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir.1988)). Specifically, a "restricted agency relationship may develop whether the two separate corporations are parent and subsidiary or are completely unrelated outside the limited agency setting." *Id.* Jurimex must allege facts sufficient to allow such a relationship to be proven at trial, but it is not required to have extensive proof at the complaint stage. *See Craftmatic Sec. Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989)("[P]laintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs [at the pleading stage].").[4]

Further, we have held that discovery is necessary when an agency relationship is alleged, thereby implicitly allowing allegations of agency to survive a facial attack. *Canavan v. Beneficial Finance Corp.*, 553 F.2d 860, 865 (3d Cir. 1977)("Because the

3. Both parties analyze the potential agency relationship under Delaware law and we will proceed on that assumption.

4. Although *Craftmatic Sec. Litigation* dealt with agency in the context of corporate fraud, it seems illogical to require a more developed factual background in a complaint alleging contract violations that is evaluated under a Rule 8 standard than the factual background we have required under the higher Rule 9 pleading standard for fraud.

10

existence of an agency relationship hinges largely on the particular facts of each case, discovery was essential to the preparation of an agency theory argument in this case."). Here, Jurimex has alleged that its past dealings with Case have involved its subsidiaries as agents in the same manner as the present and has alleged or produced affidavits evincing financial control of the transaction by Case, not its subsidiaries.

Under a Rule 12(b)(6) motion, a complaint may be dismissed "only if it is certain that no relief could be granted under any set of facts which could be proven." *Rossman v. Fleet Bank(RI) National Assoc.*, 280 F.3d 384, 387 (3d Cir. 2002). Based on the allegations, Jurimex may bring a claim against Case as the parent corporation without joining the subsidiaries if Jurimex proves there is an agency relationship between Case and its subsidiaries. *See Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1070 (3d Cir. 1979). Even if the District Court thought the evidence provided by Jurimex during the original jurisdictional hearing fell short from clearly establishing agency, we can presume that the factual nature of the relationship alleged in the amended complaint would be better understood after discovery. For example, during its earlier request for discovery, Jurimex asked for all documents concerning the communications between Case and its subsidiaries specifically limited to the Golden Grain transaction. Evidence of control by Case over the actions of Case France, Paris, and Neustadt would likely be found in such documents and demonstrate agency. By including in its amended complaint the necessary occurrences and reasons that Case controlled its subsidiaries' actions, Jurimex has alleged sufficient facts to survive a Rule 12(b)(6) motion.

11

We will reverse the District Court and remand with instructions to allow the amended complaint.

_____

TO THE CLERK:

Please file the foregoing opinion.

/s/ Richard L. Nygaard

12

Circuit Judge